**Opinion filed April 3, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00271-CV

_____

## IN THE INTEREST OF R.F. JR., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10943-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father of R.F. Jr.[1] Only the mother appealed. In her first three issues, Appellant challenges the sufficiency of the evidence to support the trial court's findings that she endangered R.F. pursuant to Sections 161.001(b)(1)(D) and (E) of the Family Code, failed to comply with the provisions of her court-ordered family plan of service under Section 161.001(b)(1)(O), and that termination of her parental rights is in the child's best interest. *See* TEX. FAM. CODE ANN.

---

[1]We use initials to refer to the child and the child's family members. *See* TEX. R. APP. P. 9.8(b). Because the father is not a party to this appeal, we will hereinafter refer to the child as "R.F."

§ 161.001(b)(1)(D), (E), (O) (West Supp. 2024).  Appellant contends in her fourth issue that the trial court erroneously admitted lab reports revealing her drug test results.  We affirm the trial court's order.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence.  *Id.* § 161.001(b).  To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child.  *Id.* § 161.001(b)(2).  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007 (West 2019).

In this case, the trial court, after a de novo hearing, found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal under Chapter 262 for abuse or neglect.  *See id.* § 161.001(b)(1)(D), (E), (O).  The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest.  *See id.* § 161.001(b)(2).

2

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied). Because a trial court conducting a de novo hearing "may also consider the record from the hearing before the associate judge," we may do so as well if it is included in the appellate record, as it is here. *See* FAM. § 201.015(c) (West 2020); *In re A.L.M.-F.*, 593 S.W.3d 271, 277 (Tex. 2019) ("[R]eview under [S]ection 201.015 is not entirely independent of the proceedings before the associate judge.").

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest

analysis evaluates the best interest of the child, not the parent. *J.S.*, 687 S.W.3d at 548 (citing *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*[2]

The Department intervened on August 23, 2022, the day after R.F. was born, because his umbilical cord blood tested positive for marihuana. Appellant also tested positive for marihuana at the hospital, and admitted to using marihuana while she was pregnant with R.F. The Department initially gave Appellant the opportunity

---

[2]R.F.'s biological father executed an affidavit of voluntary relinquishment of his parental rights to R.F. on October 9, 2024, and is not a party to this appeal. As such, we limit our rendition of the facts adduced at trial to those necessary for the resolution of the mother's (Appellant's) appeal.

to participate in family-based safety services (FBSS).[3]  However, R.F.'s pediatrician expressed concern that he was not gaining weight, and R.F. tested positive for marihuana again in January 2023.  On January 18, 2023, the Department was granted temporary managing conservatorship of R.F., and placed him with his paternal grandmother, E.F., with whom he remained until the final termination hearing.

The Department created a family plan of service for Appellant, which was made an order of the trial court on March 21, 2023.  Appellant's service plan required her to complete a substance abuse assessment, parenting classes, grief counseling, attend scheduled parent-child visitation, and by its April 14, 2023 order, the trial court amended the service plan to additionally require Appellant to test negative for illegal substances and legal substances without a prescription.  Appellant was likewise ordered to maintain safe housing that was free of drugs and other illegal substances, and refrain from associating with persons participating in illegal activities.

On June 13, 2024, while the underlying suit involving R.F. was pending, Appellant and her new boyfriend had a child, A.L.  On July 22 and September 30, 2024, A.L. tested positive for marihuana.  An associate judge held a hearing over the course of four days in July, August, and September 2024.  After the associate judge terminated Appellant's parental rights to R.F., Appellant requested a de novo hearing before the trial court.  At each hearing, the Department presented evidence of Appellant's positive drug test results, which were admitted over her objection.  After R.F. was removed, Appellant tested positive for marihuana in December 2022, January, February, March, April, and July 2023, and July 2024.

---

[3]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department."  40 TEX. ADMIN. CODE ANN. § 700.710 (2021).  The Department's Child Protective Services Division provides family-based safety services to families and children "to: (1) protect the children from abuse and neglect; (2) help the family reduce the risk of future abuse or neglect; and (3) prevent the removal of the children from their home."  *Id.*

At the first hearing before the associate judge, the Department presented the testimony of E.F. and the permanency case manager Allison-Rae Edmonson; Edmonson was the only witness at the de novo hearing. Edmonson explained that Appellant has not "refrained from associating with people participating in illegal activities," has not demonstrated that she is able to provide R.F. with a safe, appropriate, drug-free home, and failed to submit to drug testing at least four times when she was instructed to do so. For instance, at the time of the de novo hearing in October 2024, Appellant was living with her mother, her sister, and her new boyfriend. Appellant's mother and Appellant's boyfriend tested positive for marihuana, and subsequently refused to submit to drug testing shortly before the de novo hearing. In September 2024, A.L. and Appellant's sister, who helps care for A.L., tested positive for methamphetamine.

Appellant also did not complete her required grief counseling, the substance abuse assessment, and "missed lots of" scheduled parent-child visits. Edmonson attempted to facilitate Appellant's substance abuse assessment through four different providers, but Appellant failed to attend each scheduled appointment. And between April 2023 and January 2024, Appellant missed twelve visits with R.F. E.F. attested that even if Appellant attended a visit, she often left early. Finally, Appellant last showed Edmonson proof of employment in May 2024. Appellant reported a change in employment since then, but has not provided proof thereof, despite Edmonson's requests.

Both E.F. and Edmonson described R.F.'s growth and improvement since removal. Edmonson observed that R.F. is "doing well" in E.F.'s home, has bonded with her, and appears happy. R.F. "had a lot of problems when he first went into [E.F.]'s home, and [has] progressed so much." R.F. has received Early Childhood Intervention (ECI) services "[f]or most of the case." ECI resolved R.F.'s feeding and swallowing issues, and addressed additional developmental delays as they

7

emerged. E.F. testified that R.F. "wears ankle braces because his feet are turning," receives occupational therapy and physical therapy twice a week, as well as speech therapy. At the time of the de novo hearing, R.F. had worn the ankle foot orthoses (AFOs) for a few months to improve his walking, and West Texas Rehab planned on "changing his braces now to go all the way up to his knee."

According to Edmonson, E.F. was able to care for R.F., and there were no concerns about drug use in E.F.'s home. It was the Department's position that it was in R.F.'s best interest to remain with E.F. because she "provides a safe, stable home for him[,] [h]e is bonded to everyone in that home, not just [E.F.], and his parents haven't been able to remain sober." E.F. verified that she is willing and able to adopt R.F. if his parents' rights are terminated.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of R.F. This appeal followed.

*Evidentiary Ruling*

Appellant contends in her fourth issue that the trial court erred by admitting the drug test results "that contained layered hearsay," rendering them "unreliable and untrustworthy."[4] At trial, Appellant objected to the admission of these exhibits, arguing that they contain information outside the scope of the hearsay exception for business records affidavits. The trial court overruled Appellant's objections and admitted the exhibits into evidence.

Rule 803(6) of the Texas Rules of Evidence allows, as an exception to the rule against hearsay, the admission of records kept in the course of regularly conducted business activities. TEX. R. EVID. 803(6). The proponent must establish that the

---

[4]Specifically, Appellant argues that the exhibits at issue "are medical test records not prepared by the entities that produced them and three[sic] is no evidence to show how the drug tests were conducted or that the methods used for those drug tests were reliable and that they contained medical opinions." We interpret this argument, as a challenge to the trustworthiness of the exhibits.

8

document was made at or near the time of the events recorded, from information transmitted by a person with knowledge of the events, and made or kept in the course of a regularly conducted business activity, unless the opponent demonstrates the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. *Id.* The predicate for admission of a business record may be established by an affidavit that complies with Rule 902(10) of the Rules of Evidence. *See* TEX. R. EVID. 902(10).

Attached to each of the complained-of exhibits in this case was an affidavit by the custodian of records for the Texas Alcohol and Drug Testing Service. The affidavits pertained to hair, nail, urine, and oral fluid testing. The affidavits state that "strict chain of custody procedures" were utilized, and that the drug testing was performed by a certified scientist utilizing GC/MS (gas chromatography/mass spectrometry) instruments and reviewed by a licensed medical review officer. The affidavits generally track the language of Rule 803(6), which sets out the requirements for authentication purposes of an affidavit that accompanies business records. *See* TEX. R. EVID. 803(6), 902(10). The affidavits attached to the complained-of exhibits in this case provide information regarding the chain of custody, the testing procedures, and the qualifications of the analysts. The pages of the exhibits that show the results of the lab testing were signed by the medical doctor that was the certified medical review officers for the tests. Here, the affidavits are in the form provided by Rule 902(10)(B).

Appellant failed to demonstrate to the trial court that the source of information or the method or circumstances of preparation indicated a lack of trustworthiness. *See* TEX. R. EVID. 803(6)(E). *See H.G. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00373-CV, 2022 WL 17169847, at *4 (Tex. App.—Austin Nov. 23, 2022, no pet.) (mem. op.); *In re J.H.*, No. 11-22-00122-CV, 2022 WL 16640888, at *3 (Tex. App.—Eastland Nov. 3, 2022, pet. denied) (mem. op.). Consequently, the

trial court did not abuse its discretion in admitting the exhibits over Appellant's hearsay objections. *See J.H.*, 2022 WL 16640888, at *3; *In re S.W.W.*, No. 14-22-00503-CV, 2022 WL 17982904, at *8 (Tex. App.—Houston [14th Dist.] Dec. 29, 2022, pet. denied) (mem. op.); *In re E.B.*, No. 11-19-00001-CV, 2019 WL 3955974, at *3 (Tex. App.—Eastland Aug. 22, 2019, no pet.) (mem. op.).

Moreover, even if we were to assume error, we would deem any such error harmless. An error warrants reversal when it either "probably caused the rendition of an improper judgment" or "prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a); *In re J.N.*, 670 S.W.3d 614, 619 (Tex. 2023). The reviewing court must evaluate the potential influence or impact of the error on the trial court's final judgment. *J.N.*, 670 S.W.3d at 619. In this case, we conclude that the trial court's admission of the drug test results neither caused the rendition of an improper judgment, nor prevented Appellant from presenting her case to this court.

At the hearing before the associate judge, Appellant offered a permanency report dated January 18, 2024, that lists Appellant's drug test results by date. The report further states that R.F. tested positive for marihuana at birth, and again after the Department initiated the FBSS case. This same exhibit provides critical details regarding R.F.'s initial lack of weight gain, developmental delays, his need for occupational therapy, physical therapy, leg braces, and ECI services, as well as his improvement while in E.F.'s care, and the bond he has formed with her. R.F.'s medical records, which were admitted at the de novo hearing without objection, reflect that both R.F. and Appellant tested positive for marihuana when R.F. was born, and that Appellant admitted to using marihuana during pregnancy.

Therefore, the trial court's findings and its termination of Appellant's parental rights are supported by clear and convincing evidence, even without the complained-of exhibits. If erroneously admitted evidence is merely cumulative of other properly

admitted evidence, then the error is harmless. *See State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex. 2008) ("The erroneous admission of testimony that is merely cumulative of properly admitted testimony is harmless error." (quoting *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989))). Consequently, to the extent that admitting the lab reports was error, if any, it was harmless. *See* TEX. R. APP. P. 44.1(a). Accordingly, we overrule Appellant's fourth issue.

### *Sections 161.001(b)(1)(D) and (E) Endangerment*

In her first issue, Appellant challenges the trial court's findings that she endangered R.F. as set forth in Sections 161.001(b)(1)(D) and (E). Specifically, she contends that her marihuana use and R.F.'s exposure to marihuana never "caused [him] any ill effects, whatsoever" or "created a significant danger" to him, nor did it adversely affect her parenting capabilities or ability to "graduate high school, go to college, [and] get a job."

Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1)(M); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to either subsection (D) or (E), we need not address the remaining subsections, including the arguments raised by Appellant concerning subsection (O). *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1. And when the evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*,

11

660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *J.D.*, 436 S.W.3d at 114; *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," but "does not require actual harm." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child,'" nor must "the child actually suffer[] injury." *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d at 310. "A parent's drug use, violence, or other abuse may make the child's environment endangering to the child." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "A parent acts 'knowingly' when the parent is aware that the environment creates a potential danger to the child but the parent disregards that risk." *Id.* Because conditions or surroundings cannot endanger a child unless

12

the child is exposed thereto, the relevant time frame for evaluating subsection (D) is before the child's removal. *J.W.*, 645 S.W.3d at 749.

Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *J.S.*, 687 S.W.3d at 550. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277. A parent's actions prior to and after the children's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("endangering conduct may include a parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children"). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (Illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child.).

Drug use and its effects on the parent's life and ability to parent may also demonstrate an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and incapable of parenting."). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by

13

circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278 (emphasis added). "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.* (quoting *J.O.A.*, 283 S.W.3d at 345). Thus, under certain circumstances, such as the ones that are present in this case, "any drug activity may render the parent incapable of parenting." *J.S.*, 687 S.W.3d at 554 (citing *R.R.A.*, 687 S.W.3d at 278).

Here, Appellant admitted to using marihuana while pregnant with R.F. The child tested positive for marihuana not only at birth, but again at four months old, while the Department was providing family-based safety services. *See In re C.S.*, No. 11-24-00186-CV, 2024 WL 5080505, at *1 (Tex. App.—Eastland Dec. 12, 2024, no pet.) (mem. op.); *In re N.T.*, No. 02-24-00067-CV, 2024 WL 2066375, at *5 (Tex. App.—Fort Worth May 9, 2024, no pet.) (mem. op.) (affirming a conduct-based endangerment finding based in part on the children testing positive for marihuana and cocaine upon removal). A mother's "use of controlled substances while pregnant create[s] a dangerous environment for [the child]." *J.W.*, 645 S.W.3d at 749. "[H]olding otherwise would effectively endorse a parent's willful ignorance of the significant risk that a pregnant mother's drug use poses." *Id.* at 750.

Moreover, Appellant repeatedly tested positive for marihuana in the twenty-one months between R.F.'s removal and the de novo hearing, and refused several times to submit to drug testing as required. It is undisputed that "a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *J.S.*, 687 S.W.3d at 551 (quoting *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App—Houston [1st Dist.] 2016, pet. denied)). Based on the aforementioned, Appellant's illegal drug

14

use undoubtedly "expose[d] the child[] to the possibility that [she] may be impaired or imprisoned," thereby creating an endangering environment. *Id.* And despite Appellant's assertion that there was no evidence that her marihuana use caused R.F. any harm, R.F. was diagnosed as a "[n]ewborn affected by maternal use of cannabis," with "specified congenital abnormalities of [the] skin," and "congenital malformations of [the] skin." As he grew older, his numerous developmental delays required occupational therapy and physical therapy multiple times a week, speech therapy, and months spent in leg braces. Such evidence permits the rational inference that Appellant's marihuana use adversely affected R.F. *See In re D.K.H.*, No. 11-24-00012-CV, 2024 WL 3362933, at *4 (Tex. App.—Eastland 2024, no pet.) (mem. op.) (trial court could consider the child's lasting physical ailments, and cognitive impairments and delays in finding that the mother's drug use during pregnancy endangered the child).

In arguing that "allowing the child to be around individuals who use drugs" should not be held against her, Appellant ignores the clear language of subsections (D) and (E): termination may be based on clear and convincing evidence that the parent allowed the child to remain in dangerous conditions or surroundings, or with persons who engage in endangering conduct. *See* FAM. § 161.001(b)(1)(D), (E). The trial court could therefore consider that Appellant's mother and Appellant's boyfriend tested positive for marihuana, her sister tested positive for methamphetamine, and her youngest child, A.L., tested positive for methamphetamine and marihuana while this case was pending. *See In re S.V.*, No. 02-23-00188-CV, 2023 WL 5967890, at *9 (Tex. App.—Fort Worth Sept. 14, 2023, no pet.) (mem. op.) (affirming a conduct-based endangerment finding based in part on evidence that "both drugs and drug users were finding their way into the children's home"); *In re M.C.L.*, No. 04-21-00277-CV, 2022 WL 219002, at *6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.) (mem. op.) ("A parent endangers

15

her children by accepting the endangering conduct of other people."); *M.C. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-17-00104-CV, 2017 WL 3379114, at *5 (Tex. App.—Austin Aug. 1, 2017, no pet.) (mem. op.) (considering a parent's continued association with "people who smoke marihuana all the time" as evidence of endangerment).

Equally unavailing is Appellant's reliance on Section 262.116(a)(8) of the Family Code in support of her contention that termination "based on a parent's marijuana use[] should be restricted." Section 262.116(a)(8) prohibits the removal of a child based solely on the parent testing positive for marihuana, unless the parent's marihuana use "caused significant impairment to the child's physical or mental health or emotional development." FAM. § 262.116(a)(8). As this provision governs removal of the child, rather than terminating the parent-child relationship, it is immaterial to our analysis. Furthermore, it is well-established that a parent's failure to maintain sobriety—whether the substance used is legal or illegal—can constitute endangerment. *See J.S.*, 687 S.W.3d at 550 ("Evidence of endangerment is demonstrated in many forms, including . . . alcohol and drug abuse."); *S.B. v. Tex. Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246, 254 (Tex. App.—Austin 2022, pet denied) (parents testing positive before and after removal, one of the children testing positive at birth, and evidence of medical neglect supported the trial court's endangerment finding); *In re N.J.H.*, 575 S.W.3d 822, 831 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[D]rug activity can constitute endangerment even if it transpires outside the child's presence.").

Based on the foregoing, we conclude that the evidence is sufficiently clear and convincing such that a reasonable factfinder could have formed a firm conviction or belief that Appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the child. *See* FAM. § 161.001(b)(1)(E); *see also In re W.D.*,

No. 10-18-00339-CV, 2019 WL 1291111, at *3 (Tex. App.—Waco Mar. 20, 2019, no pet.) (mem. op.) ("evidence of both parents' drug use, which resulted in the children testing positive for marijuana" supported the trial court's endangerment finding). We likewise conclude that Appellant's voluntary, deliberate, and conscious acts constitute more than a single instance of conduct; the trial court could have rationally formed a firm conviction or belief that Appellant's actions created "conditions or surroundings which endanger[ed] the physical or emotional well-being of the child." *See* FAM. § 161.001(b)(1)(D).

Accordingly, we overrule Appellant's first issue. In light thereof, we need not address Appellant's second issue in which she challenges the trial court's finding under subsection (O). *See* TEX. R. APP. P. 47.1; *J.S.*, 687 S.W.3d at 551.

*Best Interest of the Child*

In her third issue Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of R.F. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014,

17

pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at \*11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)).

Evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28). In this regard, the trial court could properly consider Appellant's multiple positive drug tests, continuing to surround herself with others who engage in drug use, and her failure to comply with her court-ordered service plan in assessing whether the termination of her parental rights was in the best interest of R.F. *See E.C.R.*, 402 S.W.3d at 249–50; *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

Appellant's unapologetic marihuana use during pregnancy, and before and after removal, supports the trial court's finding that terminating her parental rights was in R.F.'s best interest. *See R.R.A.*, 687 S.W.3d at 281 (A parent's continuing pattern of drug use can support a best interest finding due to the "attendant risks to employment, housing, and prolonged absence from the children."). That is because persistent drug use by parents poses infinite potential dangers to their children, and "implicates most of the *Holley* factors." *See In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding

18

that termination is in the best interest of the child."); *E.C.R.*, 638 S.W.3d at 768 ("A parent's drug use supports a finding that termination of parental rights is in the best interest of the child.").

Although Appellant claims that she complied with her service plan requirements, "other than being 'sober,'" the evidence reveals that she failed to complete several required tasks and services. *See E.C.R.*, 402 S.W.3d at 249 (a parent's failure to complete court-ordered services can support best interest finding). For instance, Appellant failed to maintain a stable home environment with sober caregivers, which supports the rational inference that Appellant would continue to expose R.F. to drug-related danger, other criminal activity, and instability were he returned to her care. *See E.D.*, 682 S.W.3d at 607; *see also N.J.H.*, 575 S.W.3d at 834–36 (father's history of drug use and continued drug use during case bore on second, third, fourth, and seventh *Holley* factors—child's emotional and physical needs, emotional and physical danger to the child, father's parental abilities, and stability of the home—thus supporting the best interest finding). This is especially true in light of A.L. testing positive a month after he was born, and again several months later. Rather than showing any remorse, Appellant exhibits indignance that the drug use of her household members is being held against her. Such "significant evidence of parental indifference" and flouting of the parental responsibility to protect one's child weighs heavily in favor of the trial court's finding that termination is in the child's best interest. *See In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *In re A.J.W.*, No. 04-19-00346-CV, 2019 WL 6333468, at *6 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) ("The [trial] court could have rationally concluded that [the mother] is unable to protect her children or to provide them a safe and stable environment because she minimizes her drug problem."); *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *7 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.) (The

mother's "choice to minimize her past drug use" was a factor of "particular significance" in the best interest analysis.).

Additionally, Appellant refused to complete her substance abuse assessment, notwithstanding consecutive referrals to four separate providers, and failed to prove she was maintaining employment after May 2024. More importantly, Appellant missed at least a dozen visits with R.F., which can "adversely impact[] the parent-child bond." *See A.J.D.-J.*, 667 S.W.3d at 824. "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Appellant's continued failure to utilize the available programs or regularly visit R.F. demonstrates that she lacked the motivation or willingness to promote the well-being of the child. *See Holley*, 544 S.W.2d at 372. The record is thus replete with evidence of Appellant's inability to adequately parent R.F. or provide him with a safe, drug-free home environment, which supports the conclusion that the parent-child relationship is not an appropriate one. *See id.*

Given the child-centered focus of the best interest inquiry, we may not discount R.F.'s improvement in his safe and stable placement with his grandmother, who hopes to adopt him. *See J.W.*, 645 S.W.3d at 746–47. "When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with [their] parent." *In re Y.G.*, No. 01-22-00181-CV, 2022 WL 3362953, at *16 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, pet. denied) (mem. op.) (quoting *J.D.*, 436 S.W.3d at 118); *see also N.J.H.*, 575 S.W.3d at 834 (stating that evidence showing that a young child had bonded with foster family supported best interest finding). R.F. formed a bond with E.F., who provided a safe, stable, sober

home environment for him. She took R.F. to all of his appointments, was meeting his needs, and he "appear[ed] to be happy. *See M.C.L.*, 2022 WL 219002, at *6 (in child's best interest to be with a foster family that "has been attentive to meet [the child's] needs," including the child's "participat[ion] in early childhood intervention services to address an issue with his foot").

We therefore conclude that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the child. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


April 3, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.